# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEATHER LONG, individually and as parent and natural guardian of L.B., a minor | : | Civil No. 1:24-CV-00128 |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| KELLEE ROGERS, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## **MEMORANDUM**

Before the court are motions to dismiss filed by Defendants Kellee Rogers, Ryan Ramsey, James Sourbier, Andrew Zeigler, and Borough Waynesboro. (Docs. 37, 39, and 52.)  Plaintiff Heather Long ("Long") alleges a state-created danger claim, a Fourteenth Amendment claim, a malicious prosecution claim, an abuse of abuse process claim, and *Monell* claims against the Defendants, all arising from an incident in which Defendant Kellee Rogers ("Rogers") hit her car while driving at an excessive speed and allegedly under the influence of substances, and then Defendant Ryan Ramsey ("Ramsey") prosecuted a traffic citation arising from this incident.  For the reasons that follow, the motions will be granted.

1

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

As alleged in the amended complaint, sometime in early January 2022, Defendants Andrew Zeigler ("Ziegler"), a sergeant in the Waynesboro Police Department, and James Sourbier ("Sourbier"), police chief, (collectively "Police Command") became aware that Defendant Kellee Rogers ("Rogers"), a Waynesboro Borough police officer, "was using his position as a police officer to commit illegal acts of official oppression in violation of Pennsylvania law which also amounted to violations of federal constitutional rights[,]" as well as "using illegal substances, such as marijuana[,] with community members and . . . operat[ing] a motor vehicle owned, leased, and/or controlled by [the] Borough of Waynesboro and Waynesboro Police Department while still under said intoxicating effects." (Doc. 35, ¶¶ 4, 5, 12, 13.)

On January 23, 2022, Rogers and Defendant Ryan Ramsey ("Ramsey"), a corporal, left the police station in separate vehicles in order to respond to a call relating to improperly parked vehicles. (*Id.* ¶¶ 14, 15.) Both officers drove down an alley aware that there were cars parked in the alley, individuals used the alley when entering and exiting their homes, and "they needed to drive with caution in

---

[1] Plaintiff argues that Defendants proffer their own factual allegations in their respective motions. (Doc. 44, pp. 5, 6; Doc. 45, pp. 5, 6; Doc. 54, pp. 5, 6.) In reciting the facts alleged in the complaint and deciding the instant motions, the court will assume all well-pleaded allegations in the amended complaint are true and base any factual determinations only on the allegations in the complaint. *Ashcroft v. Iqbal*, 566 U.S. 662, 679 (2009).

order to avoid collision[.]" (*Id.* ¶¶ 18, 19.) Plaintiff Heather Long ("Long") and her minor child L.B. live along this alley. (*Id.* ¶¶ 1, 16, 23.) Despite Rogers' awareness of some risk associated with driving down the alley, Rogers did not activate his lights or sirens and travelled at "an excessive speed[.]" (*Id.* ¶ 20.) Rogers allegedly "had marijuana in his system and his reaction times were slowed due to impairment." (*Id.* ¶ 21.) As Rogers was driving down the alley, he "recklessly ignored the potential risk of impact with another vehicle" and "failed to yield to [Long's] vehicle" as a result of illegal substance use, thus, hitting Long, who was backing out into the alley, resulting in the vehicle spinning and striking her home. (*Id.* ¶¶ 22, 25, 26.) Long had no notice that Rogers was driving down the alley because Rogers did not activate the vehicles lights or sirens. (*Id.* ¶ 24.)

After the crash, Rogers alerted Ramsey, who returned to the alley, but neither officer activated the lights on their vehicles because they knew it would activate a dash camera. (*Id.* ¶¶ 28, 30.) Rogers was not sent for a blood test and no other law enforcement agency was alerted of the crash in order to investigate it. (*Id.* ¶¶ 31, 32.) On January 31, 2022, Plaintiff's counsel sent a litigation hold notice to the Borough and Police Department. (*Id.* ¶ 34.) As a direct result of receiving this correspondence, on February 2, 2022, Ramsey filed a citation against Long in the magisterial district court, although he backdated the citation to reflect the date of January 27, 2022. (*Id.* ¶¶ 37, 38.)

Long pleaded not guilty to the citation, and a trial was held before a magisterial district judge.  (*Id.* ¶ 39.)  At the trial, Rogers appeared as a witness, although he was no longer an employee of the Borough at that time.  (*Id.* ¶¶ 40, 41.)  At the hearing, Rogers gave statements that contradicted the facts stated in the citation, "however, despite the glaring contradiction, Ramsey aggressively pursued the charge against Heather Long and rigorously opposed a Motion for Directed Verdict[.]"  (*Id.* ¶¶ 44–46.)  The magisterial district judge found Long not guilty of the charge against her.  (*Id.* ¶ 48.)  After this hearing, the Waynesboro Police Department continued to try to interview L.B., despite notice from Plaintiff's counsel that the police did not have permission to speak with either Long or L.B.  (*Id.* ¶ 49–56.)

Long initiated the instant lawsuit on January 23, 2024.  (Doc. 1.)  After the court approved limited discovery, Plaintiff filed an amended complaint on July 15, 2024.  (Doc. 35.)  In the amended complaint, Plaintiff brings one § 1983 claim for violation of a constitutional right on a theory of state created danger against all Defendants (Count I), one § 1983 claim for violation of the Fourteenth Amendment against Defendant Rogers only (Count II), one § 1983 malicious prosecution claim against Defendants Rogers and Ramsey (Count III), one § 1983 abuse of process claim against Defendant Ramsey only (Count IV), one § 1983 violation of the Fourteenth Amendment claim on a *Monell* theory of liability

against Defendants Borough of Waynesboro and Waynesboro Police Department[2] (Count V), one § 1983 failure to supervise claim against Defendants Sourbier and Ziegler (Count VI), and one § 1983 failure to train claim against Defendants Sourbier and Ziegler (Count VII).  (*Id.* ¶¶ 58–165.)

Defendants Kellee Rogers and Borough of Waynesboro filed a motion to dismiss on July 29, 2024.  (Doc. 37.)  Defendants Ramsey and Sourbier filed a motion to dismiss on July 29, 2024.  (Doc. 39.)  Defendant Zeigler, who was named for the first time in the amended complaint, filed a motion to dismiss on October 11, 2024, after waiving service.  (Doc. 43, 52.)  Long filed a brief in opposition to each motion.  (Docs. 50, 51, 55.)  All motions are fully briefed and ripe for disposition.

## JURISDICTION AND VENUE

The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Long alleges violations of her constitutional rights under 42 U.S.C. § 1983.  Venue is appropriate pursuant to 28 U.S.C.§ 1391 because all parties are located within the Middle District of Pennsylvania and all acts or omissions alleged in the amended complaint occurred within the Middle District.

---

[2] The court notes that Waynesboro Police Department is not listed as a Defendant in the case caption, however, the Waynesboro Police Department is listed under the section heading "Parties."  (Doc. 35, ¶ 7.)

## STANDARD OF REVIEW[3]

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized in Mack v. Yost*, 968 F.3d 311, 319 n. 7 (3rd Cir. 2020).

---

[3] The court notes that Plaintiff's briefs in opposition all recite a standard of review applicable to a motion to dismiss brought under Federal Rule of Procedure 12(b)(1), asking for dismissal due to lack of subject matter jurisdiction. (Doc. 44, pp. 6, 7; Doc. 45, p. 7; Doc. 54, pp. 6, 7.) As requested by Defendants Ramsey and Sourbier, the court will disregard the standard of review proffered by Plaintiff and apply the standard of review for a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. (Doc. 51, p. 5.)

**DISCUSSION**

Each defendant has argued that Long has failed to state a claim in each count of the amended complaint. The court will address each count and the parties' arguments with respect thereto.

## A. State-Created Danger Claim

Rogers and Waynesboro make two arguments regarding the state-created danger claim. First, they argue that Long has failed to state a state-created danger claim by failing to establish that she is a member of a discrete class because she has defined the class in terms of location, rather than in reference to the harm alleged. (Doc. 38, pp. 9, 10, 12.) Second, Rogers and Waynesboro argue that Long has failed to plead that Rogers acted with the requisite level of culpability to shock the conscience. (*Id.* at 10–13.) Rogers and Waynesboro conclude their argument on this claim by noting that the claim relies upon common law tort principles, and the Supreme Court has "unequivocally condemned efforts to cloak traditional tort law claims in the guise of constitutional violations[.]" (*Id.* at 13.)

Defendants Ramsey, Sourbier, and Ziegler[4] argue that Long cannot meet the culpability and foreseeable victim elements of a state-created danger claim.

---

[4] Although Defendant Ziegler filed a separate motion and brief, it largely mimics the brief filed by Ramsey and Sourbier. (*Compare* Docs. 40 & 53.) The court will thus consider both motions together. Long's response to the Ziegler's brief varies in rhetoric, but the law relied upon is virtually the same. To the extent there is a meaningful difference, the court will include it. For ease of reference, the court will cite to Ramsey and Sourbier's brief in support.

Regarding the culpability element, Ramsey, Sourbier, and Ziegler analogize this case to a high speed police pursuit, which are "'hyperpressurized situations' requiring an intent to harm[,]" and that Long has failed to allege an intent to harm (Doc. 40, pp. 9, 10) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 835 (1998)). Ramsey, Sourbier, and Ziegler further argue that Long has not alleged the culpability required in a situation involving "unhurried judgments" because the amended complaint "does not state Defendant Rogers's speed, Plaintiff's speed, the speed limit of the alleyway, how or to what extent Defendant Rogers was allegedly impacted by marijuana, how much and when Defendant Rogers allegedly used marijuana, and/or the weather and traffic conditions at the time." (*Id.*) Ramsey, Sourbier, and Ziegler point to cases in which courts found the appropriate level of culpability had been alleged and note the facts in those cases are markedly different than the facts here. (*Id.* at 11, n.2, 3.) Turning to the second element, Ramsey, Sourbier, and Ziegler argue Long has not shown she is a foreseeable victim or a member of a discrete class because she has not alleged any contact with Rogers leading up to the accident and the class alleged is more akin to the general public. (*Id.* at 11, 12.)

Ramsey, Sourbier, and Ziegler also argue that Long has not alleged the personal involvement of Defendants Ramsey, Sourbier, and Ziegler in the accident

beyond generic knowledge that Defendant Rogers had used his office to commit illegal acts and was using illegal substances.  (*Id.* at 13–15.)

In opposition, Long first notes that Rogers and Waynesboro do not argue that she has failed to plead that the harm was foreseeable and direct and that the state actor affirmatively used his authority.  (Doc. 45, p. 9.)  Additionally, Long decries Rogers and Waynesboro's description of the accident as fortuitous as "arrogant" and "mind-boggling," and indicative of the attitude of the police department as a whole.[5]  (*Id.*)

Turning to the issues relevant to this case, Long argues that she has alleged the appropriate degree of culpability to show that Rogers's conduct shocks the conscience.  (*Id.* at 11–13.)  Long contends that Rogers had time to make "unhurried judgments" because he was responding to a call about parked cars and not involved in an active police chase.  (*Id.* at 12.)  Thus, his conduct should be analyzed under a deliberate indifference standard, and "the averments are sufficient to support 'unhurried judgment' with time for 'careful deliberation' followed by actions done with deliberate indifference."  (*Id.*)

---

[5] Long also spends time refuting an argument that Long "failed to exercise sound judgment" or that she failed to comply "with the rules of the road."  (*Id.*)  However, upon reading Rogers and Waynesboro's briefing, this language was used to describe how the amended complaint described the conduct which caused the harm, i.e. Rogers's conduct.  (Doc. 3, p. 12) ("The conduct critical to the harm alleged by Plaintiff's Amended Complaint focuses upon an alleged failure to exercise sound judgment, and upon compliance with the rules of the road.  This conduct fortuitously occurred in an alley near Plaintiff's residence.")

Next, Long argues that "[p]ersons who live along the alley and must use the alley to enter and exit their property are clearly foreseeable victims and/or members of a discrete class of persons." (*Id.* at 13.) Long distinguishes the case law provided by Rogers and Waynesboro by noting that "those cases involved general drivers and passengers traveling along a highway, not a limited number of people who lived along the alley[,]" and that "[t]he special danger in this case was created by the police using the alley at a high rate of speed without police lights and police sirens and while in an altered state." (*Id.* at 14, 15.)

Regarding Ramsey and Sourbier's personal involvement, Long argues the amended complaint alleges that "Ramsey knew Rogers was in an altered state before they left for the call but did not nothing [sic] to intervene[.] As a law enforcement officer, Ramsey had an affirmative duty to intervene in criminal conduct (driving in altered state) whether he was Rogers's supervisor or not." (Doc. 44, p. 15.) The court notes that Long provides no case law to support her conclusion that Ramsey had an affirmative duty to intervene. Long also argues that Sourbier knew Rogers had been driving in an altered state and that officers drove down the alley too fast. (*Id.*)

Under the state-created danger theory of liability, a State and state actors can be liable "when state authority is affirmatively employed in a manner that injures a citizen or renders him 'more vulnerable to injury from another source than he or

10

she would have been in the absence of state intervention.'" *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006) (quoting *Schieber v. City of Phila.*, 320 F.3d 409, 416 (3d Cir. 2003)).

To establish a state-created danger claim, a plaintiff must demonstrate that: (1) "the harm ultimately caused was foreseeable and fairly direct;" (2) "a state actor acted with a degree of culpability that shocks the conscience;" (3) "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general;" and (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *L.R. ex rel. N.R. v. School Dist. of Phila.*, 836 F.3d 235, 242 (3d Cir. 2016) (citing *Bright*, 443 F.3d at 281).

Because it is dispositive of the motions, the court will address the third element.  Satisfying this element requires "some contact such that the plaintiff was a foreseeable victim of a defendant's acts in a tort sense."  *Kneipp v.* Tedder, 95 F.3d 1199, 1209 n.22 (3d Cir. 1996).  A sufficiently close relationship exists when either "(1) 'a specific individual has been placed in harm's way' or (2) the plaintiff '[is] part of an identifiable and discrete class of persons subject to the harm the

state allegedly has created.'" *Hopkins v. Yesser*, 412 F.Supp.3d517, 524 (E.D. Pa.

2019) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 914 (3d Cir.

1997)).  The focus in this analysis is on foreseeability.  *Id.*  Thus, when alleging

that plaintiff is part of a discrete class, "the group must be limited enough to

remain separate from the general public."  *Id.*  "Where the state actor has allegedly

created a danger towards the public generally, rather than an individual or group of

individuals, holding a state actor liable for the injuries of foreseeable plaintiffs

would expand the scope of the state-created danger theory beyond its useful and

intended limits."  *Morse*, 132 F.3d at 913 n.12.

    Long has not pleaded that she is a foreseeable victim of the harm alleged

separate from the general public.  The harm here—injury due to reckless and

impaired driving of a police officer—is a harm faced by the whole jurisdiction of

Waynesboro, not just those living along the alley.  Thus, this case is similar to

*Watson v. Methacton*, in which the Eastern District of Pennsylvania held that

naming "travelers within the vicinity of Methacton High School after the Party

ended" as a discrete class would "extend the state-create danger doctrine beyond

'its useful and intended limits.'"  513 F. Supp. 2d. 360, 377 (E.D. Pa. 2007).  As

the district court in *Long v. Armstrong County* explained, basing a discrete class on

geography is "unavailing because the 'public in general' rule already internalizes

the argument that those living closer to an alleged state-created danger face a

higher probability of harm than those living elsewhere." 189 F. Supp. 3d. 502, 511

(W.D. Pa. 2016). Thus, the court in *Long* held:

> while it might be *more* foreseeable that those residing around some
> danger allegedly created by the state might be victims of harm (that is,
> more likely to be injured from a probability perspective), without some
> specific relationship or other indication that they are especially likely
> to be harmed by the government's act, they are not *sufficiently* discrete
> or foreseeable to warrant state-created danger liability.

*Long v. Armstrong Cnty.*, 189 F. Supp. 3d 502, 512 (W.D. Pa. 2016), *aff'd sub*

*nom. Long v. Cnty. of Armstrong*, 679 F. App'x 221 (3d Cir. 2017). Therefore,

Long has failed to allege that she is part of a discrete class that is sufficiently

distinguishable from the general public. Thus, the court will grant Defendants'

motions to dismiss and dismiss count I without prejudice.[6]

## B. Fourteenth Amendment

Rogers argues that he is entitled to qualified immunity from Long's

Fourteenth Amendment claim because Long has not pointed to authority which

stands "for the proposition that the Fourteenth Amendment is implicated in the

context of a fortuitous motor vehicle accident without an active pursuit." (Doc. 38,

---

[6]The Supreme Court has held that amendment should be freely given, absent "undue delay, bad
faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by
amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of
the amendment, futility of amendment, etc.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).
Further, in civil rights cases, "courts must offer amendment irrespective of whether it is
requested when dismissing a case for failure to state a claim unless doing so would be
inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247,
251 (3d Cir. 2007). Here, it is not sufficiently clear that giving leave to amend would be futile.

p. 15.)  Long points to case law from the Fourth, Third, and Tenth Circuits which Long argues establish that police officers driving recklessly can result in a constitutional injury.  (*Id.* at 15, 16) (citing *Dean v. McKinney*, 976 F.3d 407, 418 (4th Cir. 2020); *Sauers v. Nesquehoning*, 905 F.3d 711, 718 (3d Cir. 2018); *Browder v. City of Albuquerque*, 787 F.3d 1076, 1081 (10th Cir. 2015)).  Further, Long maintains that *Sauers* establishes that Rogers's conduct is a constitutional violation.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818).  The doctrine "protects all but the plainly incompetent or those who knowingly violate the law."  *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).  Courts follow a two-pronged test to determine whether qualified immunity applies.  *Pearson*, 555 U.S. at 232.  First, the court must determine whether the defendants violated the plaintiff's statutory or constitutional right.  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  Second, the court must determine whether the right at issue was clearly established at the time of the violation.  *Id.* (citing *Reichle*, 566 U.S. at 664).

14

The court may exercise its discretion in deciding "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Defendants asserting that they are entitled to qualified immunity have the burden to prove that the doctrine applies. *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014). Finally, because "the 'driving force' behind the creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery[,]" the Supreme court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 231–32.

The court will begin by deciding whether Long has established that she suffered from a constitutional violation. She has not. Long pleads that she "has a clearly established right to bodily integrity under the Fourteenth Amendment. Civilian injury during an inherently dangerous police vehicle movement has been established as a violation of the Fourteenth Amendment." (Doc. 35, ¶ 98.) As discussed above, Long has failed to allege a constitutional violation under the state-created danger theory. To the extent that Count II alleges a Fourteenth Amendment substantive due process violation under a different theory, it is unclear what that theory is. The remaining allegations in count II reference reckless driving on behalf of Defendant Rogers and conclude that he acted with deliberate

indifference.  (*Id.* ¶¶ 99–102.)  However, there are no allegations of behavior

which shocks the conscience, which are necessary to state a claim for a violation of

substantive due process.  *See Lewis*, 523 U.S. at 846.  Therefore, because "liability

for negligently inflicted harm is categorically beneath the threshold of

constitutional due process," the motion to dismiss regarding the count II claim will

be granted.  *Id.*  Long will be given leave to amend.

### C. Malicious Prosecution

All Defendants argue that Long has failed to plead facts showing she

suffered a deprivation of liberty in connection with the traffic citation.  (Doc. 38,

pp. 16, 17; Doc. 40, pp. 16, 17.)  Long's argument on the malicious prosecution

claim consists of quoting the elements of a malicious prosecution claim and

concluding that she has "averred facts consistent with these elements."  (Doc. 46,

p.19.)

The elements of a malicious prosecution claim under § 1983 are as follows:

> (1) the defendants initiated a criminal proceeding; (2) the criminal
> proceeding ended in plaintiff's favor; (3) the proceeding was initiated
> without probable cause; (4) the defendants acted maliciously or for a
> purpose other than bringing the plaintiff to justice; and (5) the plaintiff
> suffered deprivation of liberty consistent with the concept of seizure as
> a          consequence          of          a          legal          proceeding.

*Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).  The Third Circuit has

held that a plaintiff fails to establish the fifth element when a plaintiff is only

issued a summons, not arrested, not required to post bail, is free to travel, and is not required to report to any kind of pretrial supervision. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). If a plaintiff's liberty is only restricted by means of appearing for trial, the Fourth Amendment is not implicated because it "does not extend beyond the period of pretrial restrictions." *Id.*

There is no allegation of a deprivation of liberty consistent with the concept of a seizure in the amended complaint at all. There are only allegations that Long was issued a citation and that she appeared for trial before the magisterial district court. (Doc. 35, ¶¶ 37, 39.) Accordingly, the motion to dismiss will be granted as to count III. This count will be dismissed with prejudice because amendment is futile. *Fletcher-Harlee Corp.*, 482 F.3d at 251. Amendment would be futile here because case law specifically excludes circumstances such as here, where Long cannot allege that her freedom was restricted pre-trial because she was not arrested and was only issued a summons.

### D. Abuse of Process

Ramsey argues that the abuse of process claim against him fails because the amended complaint alleges that the "citation was initiated and prosecuted for an allegedly improper purpose[,]" rather than the citation was properly initiated and the subsequent process was abused. (Doc. 40, pp. 17, 18.) Long argues her abuse of process claim is adequately pleaded because "there is also Third Circuit

precedent finding abuse of process is broader than those claims where the initial

prosecution is initiated legitimately[.]"  (Doc. 44, p. 17) (citing *Zvonek v. Walters*,

No. 3:20-CV-1185, 2024 WL 759865, at * 14–16 (M.D. Pa. Feb. 23, 2024)).

Under § 1983, an abuse of process claim "lies where 'prosecution is initiated

legitimately and thereafter is used for a purpose other than that intended by the

law.'"  *Rose v. Bartle*, 871 F.3d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v.

Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)).  To recover under this theory, "a

plaintiff must show that the defendant used legal process against the plaintiff in a

way that constituted a perversion of that process and caused harm to the plaintiff."

*Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 287, 304 (3d Cir.

2003).

As alleged in the amended complaint, the event that triggered the alleged

abuse of process was Rogers's inconsistent testimony. (Doc. 35, ¶ 117.)  It is

unclear from the amended complaint what further process occurred after this

moment, besides Long being acquitted of the traffic citation.  Long provides no

case law supporting the argument that arguing a case through to verdict is an abuse

of process.  Therefore, the motion to dismiss will be granted as to count IV.  Long

will be given leave to amend.

### E. *Monell* Claims

Waynesboro argues that the amended complaint does not identify a "specific formal policy nor does Plaintiff state 'exactly what that custom or policy was[,]'" and challenges the averments in the complaint as conclusory.  (Doc. 38, p. 19) (citing *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).)  Long argues that she has sufficiently pleaded "specific customs that caused the constitutional deprivations, who the persons responsible for the deprivation of constitutional rights were, and that the conduct was deliberate and condoned (ratified) by Defendants."  (Doc. 45, p. 18.)

A municipality can be liable for constitutional violations committed by its employees only when "the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).  Accordingly, a plaintiff must "plead that the complained-of injury was caused directly by a local government's 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'"  *Schlaybach v. Berks Heim Nursing & Rehab*, 434 F. Supp. 3d 342, 350–51 (E.D. Pa. 2020) (quoting *Harris v. City of Phila.*, 171 F. Supp. 3d 395, 400 (E.D. Pa. 2016)).

A policy or custom can be proven in multiple ways.  A plaintiff may point to "a formal policy officially promulgated or endorsed by the municipality . . . ." *Id.* at 351.  The policy must be "an official proclamation, policy or edict" made by "a decisionmaker possessing final authority to establish municipal policy with respect to the action[.]" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d. Cir. 2019).  Absent a formal policy, the plaintiff may allege a municipality's custom, which is "a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a policymaker must have been aware[,]" caused the violation of their rights.  *Id.* (*see also Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d. Cir. 1990)).  The custom must be "so well-settled and permanent as virtually to constitute law." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007).

The court finds that the allegations regarding Waynesboro's policies are conclusory.  Long has not provided a specific official policy, and she has also not provided anything other than conclusory recitals of the elements of a *Monell* claim that the alleged policies are consistent and widespread.  (Doc. 35, ¶¶ 128, 129, 130.)  Therefore, the *Monell* claim against Waynesboro, count V, will be dismissed without prejudice and with leave to amend.

### F. Failure to Supervise and Train Claims

Sourbier and Ziegler argue that Long has not plausibly alleged a claim against them because they were not "the moving force behind any alleged violation of Plaintiff's rights." (Doc. 40, p. 19.) Sourbier and Ziegler further argue there is no causal connection between the policy alleged to have deprived Long of a constitutional right, and there is no policy alleged at all regarding the prosecution. (*Id.* at 19, 20.) Sourbier and Ziegler also argue that Long failed to allege deliberate indifference in both the failure to supervise and failure to train claims, because she has failed to allege any other incidents regarding the same situations such that the defendants would be on notice that the police department's policies were inadequate. (*Id.* at 19–21.)

Long argues that she has alleged personal involvement by Sourbier and Ziegler including "deliberate indifference to Rogers's drug and alcohol use, Rogers and Ramsey lying about the accident, committing and/or suborning perjury and a basic failure to train Rogers regarding safe use of the police vehicle and equipment." (Doc. 44, p. 18.)

Supervisory liability under § 1983 utilizes the same standard as municipal liability. *See Carter v. City of Philadelphia*, 181 F.3d 339, 356 (3d Cir. 1999). Under either a failure to supervise or failure to train theory, a supervisor will only be liable for the acts of a subordinate if he fosters a policy or custom that amounts

to deliberate indifference towards an individual's constitutional rights. *See id.* at 357; *see also Reitz v. Cnty. of Bucks*, 125 F.3d 138, 145 (3d Cir. 1997).  Further, "[a]s in any action under § 1983, the first step is to identify the exact contours of the underlying right said to have been violated."  *Lewis*, 523 U.S. at 841 n.5. Because, as discussed above, the amended complaint fails to adequately allege a constitutional violation, the court will not determine whether the amended complaint has adequately alleged liability for a constitutional violation. Accordingly, the motion to dismiss will be granted and Counts VI and VII will be dismissed without prejudice.

## CONCLUSION

Based on the foregoing, the motions to dismiss will be granted.  An Order follows.

> s/Jennifer P. Wilson
> JENNIFER P. WILSON
> United States District Court Judge
> Middle District of Pennsylvania

Dated: January 3, 2025